I'd like to address both counsel. Going into this case in my preparation as late as Thursday, I thought it was probably infirmis, and then I became aware of a substantial number of settlements that have been affected both nationally and in California with respect to UNUM. Can you represent to me that this case is not one of those cases? This case is not in the UNUM reassessment program. From everything I read in the settlement, it sounds to me like we have conflicting witnesses and that UNUM has used fraudulent witnesses or doctor's examinations in denying this type claim. Are you representing to us that there's no such thing in this case? I think, Your Honor, there Have you read the stuff that's on the Internet? Yes, I have, Your Honor, and I do have a number of my clients who have gone into the UNUM reassessment program. There is nothing in the record of this case that would indicate that there was any fraud on the part of UNUM. Well, it was a matter of business practice by UNUM that they were denying claims right and left all over the United States that are under this type of an insurance policy. And they're paying huge settlements to the States and to the State of California specifically. Counsel, for my benefit, could you tell me who's answering questions? Because I don't understand. This just starts off, and I don't understand what's going on. Lawrence Padway representing the appellant Terrell Armstrong. Thank you. OK, it would be useless for us to go forward with this at this time, but if you say that this is never going to be eligible for settlement under either of those, either the global settlement or the state settlement, I'll accept your representation.  OK. Doctors use the differential diagnosis methodology to determine whether or not patients have a condition, and that methodology has been accepted, at least in this type of situation, as complying with the requirements of Dauber and other cases as a reliable scientific methodology. Dr. Joel, who treated Mr. Armstrong, took a history and did an examination in which he found nothing wrong with the knee, and from which he concluded that the preexisting condition that Mr. Armstrong had was a nerve injury, which he treated. The insurance company rejects Dr. Joel's opinion and would like to substitute the opinion of its medical experts, but they did not follow the differential diagnosis methodology, and they can't, because the only examination of Mr. Armstrong was done by Dr. Joel. So in order to say that he had a condition different than what Dr. Joel had, they first have to reject the examination done by Dr. Joel, and then they're left with no examination at all. And since it is the insurer's burden of proof that a preexisting condition exists, they cannot make that burden of proof because they have no examination. Let me make sure I understand what happened here. Dr. Joel treats him for this pain in his knee. Yes. Or pain that he feels in the knee area. And he gives him certain shots that he now says were for referred pain from his back. Stop me if I'm wrong. That's correct. I just want to make sure we're on the same page. The doctors, the UNUM doctors, look at this diagnosis and say, look, we look at the place and the kind of injection he gave him, and that's not the kind of injection or the place you would give an injection if this were referred pain. To us, it looks like from what he says he actually did, that this was a treatment for not referred pain from the back, but direct pain from arthritis in the knee. You don't need to agree with me. I just want to make sure we're on the same page. Yes. Now, if we are, it seems to me, I mean, again, I know even less about doctoring than I do about juvenile courts in California, but it seems to me that this is the kind of thing that one can figure out or a doctor should be able to figure out without being able to, without necessarily examining the patient. If somebody comes in and says, look, I had a burn wound and, you know, and what the doctor did for it is he gave me a band-aid on my finger. You know, I had a burn wound on my head. You would say, no, well, obviously, you know, what you had was something wrong with your finger, no matter what the doctor says, no. Why isn't this kind of analysis okay and something that we need to give reference to? Because there's more than one condition that you can have that would result in knee pain. Knee pain is a very nonspecific symptom. And there are multiple causes for it. So from a differential diagnosis, you have to be able to eliminate the alternate causes, and you can't eliminate the alternate causes unless you have an examination. And here, if you say we reject Dr. Joel's examination, then you have no examination. So there would never be any examination, right, possible? Because we know when his own doctor, Chang was it, later works on it, the doctor knows that this knee has been deteriorating for a very long time, and indeed there are just threads of part of the ligaments left. I mean, obviously, he's had a terrible knee for a long time, and the doctor knows that and can see it, and he tells that doctor that it's been going on for eight months, which takes you back to that period. But if I understand your argument, none of those doctors examined him at the very moment, so we're stuck with Dr. Joel, period. Is that correct? Well, you're stuck with Dr. Joel, or you're stuck with no examination. That's what I'm saying. So we're stuck with him, period. So whatever he says goes, and that's the end of it. Or if you reject it, which they did, then you're left with whoever has the burden of proof loses because there's no exam. That's what I said. So your point is that once Dr. Joel has done his thing, nobody can ever question that. That's the end. They've got to give him disability, and that's the end of the case. No, I think you can't question what Dr. Joel did, but you can't replace what he did by imagining that he had different findings. Well, they question what he did and say he got it wrong. In light of what he was looking at and in light of what he was examining, he obviously got it wrong. That clearly is not what happened or what was going on with this guy's knee. They at least can say that, you say? Yes, certainly they can say that. But that's not good enough, is that right? No, I think they can say that. They can say Dr. Joel got it wrong. But that's not good enough, is that right? That's not good enough because this man has a discrepancy in leg length. He had polio as a child. He's had knee problems for many years. He's got back problems. He's got neck problems. He was in an accident three weeks before this. He saw Dr. Joel. You can't say that the knee pain he had on this one occasion is, in fact, the same thing that he had eight months later. So what I said before is correct. If they don't accept Dr. Joel, which says he gets disability, in effect, then they're out, right? Because they can't not accept Dr. Joel or else they have to give him disability. Is that correct? Yes. Gotcha. Thank you. I mean, I understand what you're saying. Right. And I think the reason that follows is because they have the burden of proof on preexisting condition, and they have to show what the condition is. It's too neat. I think this is what Judge Fernandez is pointing out, that it's one of those situations where, since obviously the insurer will have no way of having examined him at the time, since he wasn't even in his preexisting condition, he wasn't even working for this employer, so there was no chance to examine him at the time. Essentially, it's a situation where heads are win, tails are lose. And I think if you accept Dr. Joel's assessment, the insurance company loses. If you reject it, the insurance company loses for failure of the burden of proof. It's a little too neat. You've got to come up with a case where the applicant loses or can lose. Here's where the applicant loses. They look at Dr. Joel's examination, and they say, oh, Dr. Joel had a positive anterior drawer test, and he misinterpreted that test. Now they've got an examination finding. Now they have a basis on which somebody else can make a different differential diagnosis. Or if you had a condition where it wasn't knee pain. I don't follow. Why isn't that just a situation where you say, well, Dr. Joel misinterpreted this test. We therefore reject his analysis, and here we are back with no proof. Well, if you have to carry the burden of proof, we lose. Well, that's right. But if Dr. Joel, for example, had a positive anterior drawer test and said, well, that doesn't mean that the knee is bad, you could say, well, a positive anterior drawer test does mean the knee is bad. And you could make your differential diagnosis that way. But you can't make a differential diagnosis of knee pain without an examination. That's why people go to doctors. How could you make that diagnosis? I mean, you can't obviously examine him at the time. That time has passed.  And that's, I think, the whole point of the preexisting condition, exclusion is, that you don't want people coming into the risk pool and sharing at the low premiums when you already know that they're going to make the claim. I mean, that's the basic principle of insurance. That's why you don't allow people to buy automobile insurance the day after they had the accident. They have to buy it before because there's an unknown. And in preexisting conditions, the whole point is, what do you know that's going to be a claim and what do you not know? And here, if you say there's no examination because we reject Dr. Joel's examination, what you have is an unknown, which means you should be in the risk pool with everybody else because you don't know that you've got a particular condition with the knee. All you can say is there's some generic knee pain, which could be anything. Time's up. Thank you. Good morning, Your Honor. Sean Nolte representing the defendant, Pelley, Lab 1. I would like to first address, Your Honors, this briefly, the argument that counsel for Mr. Armstrong made. The first thing is we're dealing with an abuse of discretion standard in this matter so that it's not a burden of proof issue under Dauber. It is a, was there a reasonable basis for the administrator's decision under your opinion? But if there was no proof, it's an abuse of discretion. If there was no proof to support the decision, Your Honor, it would be an abuse of discretion. And what opposing counsel says is you have to have an examination. And the only one who examined him at the time was Dr. Joel. And once you kick out his testimony, if you do, you either accept his testimony or if you kick out his testimony, then there's no proof. Your Honor, I think Mr. Armstrong's argument is too narrow because as he, as Mr. Armstrong's counsel points out, it's not simply a matter of a physical examination. It's also history. It's also diagnostic studies. It's also the subjective complaints that the, that Mr. Armstrong goes to the physician with. In the first instance, the history with the muscle, with the polio and with the muscle weakness causing a degeneration over time, a chronic degeneration over time of the ACL in the left knee as well as causing arthritis. That's one component. The second component would be the subjective complaints that Mr. Armstrong came to the doctor with that day. And that day he complained of knee pain. Not pain down his lower leg. He complained of knee pain directly on the knee, which is consistent with the ACL problem that's the source of the disability. The third component would be the diagnostic. But it's also consistent with what Dr. Joel says, which is a pain from the back, right? Your Honor, I am going to be very reluctant to get into a medical debate with you. I can only say that the Chief is It's not a medical debate. I'm saying as far as the record shows. I don't know this at all. You couldn't prove it by me. But I just read what's in the record, and there seems to be evidence that recurrent pain from the lower back can seem to be knee pain. Now, maybe I'm misreading the record, but that's what I thought there was evidence to that effect. That's the evidence that Mr. Armstrong submitted, certainly, Your Honor, through Dr. Joel. And I can't. It's there in the record. But two orthopedic examiners for Unum, they examined it on Unum's behalf at Unum's request, stated that when you inject the suppressed nerve, it has a branch that goes to the knee and supplies the knee. And that is why when he had the injection, he had two weeks of pain. But now we are at the injection stage. We are not yet at the injection stage. We're just dealing with a simple question. You said, look, he walks in, he has knee pain. That's consistent with a bad ACL. That's what you said. Yes. But it's also consistent, as far as I can tell from the record, with recurrent pain from the lower back. And then we got into this whole discussion about whether I'm a doctor or you're a doctor, and we realized neither of us is a doctor. We just have to see what's in the record. And as best I can tell, the record says, in fact, and we have to accept that as a possibility, that pain in the knee could reflect nothing wrong with the knee at all.  Yes, Your Honor. That's a possibility, and it's in the record. So the fact that he walks in and says, I've got pain in my knee, doesn't differentiate between those two possibilities. It could be pain in the knee. It could be pain from the back. In and of itself, it does not. But if you take it in conjunction with the history and then the subsequent MRI findings where they say that the ACL has completely deteriorated, and you look at the diagnostic picture as a whole, there is a reasonable basis for the administrator's decision. And under an abuse of discretion and under Jordan, that's all we need to have is a reasonable basis. And we had two board-certified orthopedists review it on three different occasions, Dr. Thomas twice, Dr. Kovinsky once. Each of them came to these conclusions. And so, again, under Jordan v. Northrop and under the abuse of discretion standard, if there is a reasonable basis for the decision, which there is here, it has to be upheld. I think we understand the argument. Thank you. Thank you, Your Honor. Keisha Sawyer will stand submitted.
judges: Kozinski, Beezer, Fernandez